IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ROBERT DELBERT ABRAHAMS JR., <br><br> Plaintiff, <br><br> vs. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Defendant. | CV 20-158-BLG-TJC <br><br> **ORDER** |

Plaintiff Robert Delbert Abrahams, Jr. ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") regarding the denial of his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. (Doc. 1.) The Commissioner subsequently filed the Administrative Record ("A.R."). (Doc. 10.)

Presently before the Court is Plaintiff's motion for summary judgment, seeking reversal of the Commissioner's denial of disability benefits and remand for an award of disability benefits, or alternatively for further administrative proceedings. (Doc. 14.) The motion is fully briefed and ripe for the Court's

1

review.  (Docs. 17, 18.)

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court finds the ALJ's decision should be **AFFIRMED**.

## I.     PROCEDURAL BACKGROUND

Plaintiff filed an application for disability insurance benefits on February 22, 2017.  (A.R. 206-209.)  A hearing was held before Administrative Law Judge Michael Kilroy (the "ALJ") on October 30, 2019.  (A.R. 33-100.)  On December 11, 2019, the ALJ issued a written decision finding Plaintiff not disabled.  (A.R. 13-27.)  Plaintiff requested review of the decision, and on September 3, 2020, the Appeals Council denied Plaintiff's request.  (A.R. 1-6.)  Thereafter, Plaintiff filed the instant action.  (Doc. 1.)

## II.    LEGAL STANDARDS

### A.     Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited.  The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error."  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is

not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at 1457. In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a

conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

    **B.    Determination of Disability**

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) he suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work he previously performed, or any other substantial gainful employment which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). A claimant must meet both requirements to be classified as disabled. *Id*.

The Commissioner makes the assessment of disability through a five-step sequential evaluation process. If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)). The five steps are:

1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

Although the ALJ must assist the claimant in developing a record, the claimant bears the burden of proof during the first four steps, while the Commissioner bears the burden of proof at the fifth step. *Tackett v. Apfel*, 180 F.3d 1094, 1098, n.3 (citing 20 C.F.R. § 404.1512(d)). At step five, the Commissioner must "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id*. at 1100 (quoting 20 C.F.R. § 404.1560(b)(3)).

### III. THE ALJ'S FINDINGS

The ALJ followed the five-step sequential evaluation process in considering Plaintiff's claim. First, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date of February 16, 2017. (A.R. 15.)

Second, the ALJ found that Plaintiff had the following medically determinable severe impairments: degenerative disc disease of the lumbar spine, depressive disorder, and anxiety.  (A.R. 15.)

Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any one of the impairments in the Listing of Impairments.  (A.R. 16-18.)  Fourth, the ALJ stated Plaintiff has the RFC to:

> perform light work as defined in 20 CFR 404.1567(b), such that he can push, pull, lift, or carry 20 pounds occasionally and 10 pounds frequently.  In an 8-hour workday, he can stand/walk for 4 hours and sit for 6 hours.  He can never climb ladders or scaffolds, but he can occasionally balance, stoop, kneel, crouch, crawl, or climb ramps or stairs.  He must avoid concentrated exposure to extreme cold and vibration.  With respect to in-person contact with the general public, he can never interact in groups of 4 or more, he can occasionally interact in groups of 2-3, and he can frequently interact on a 1-to-1 basis.  He has no limitations on interacting via the Internet/computer or telephone.

(A.R. 18.)

The ALJ next found that Plaintiff was unable to perform his past relevant work, but could perform other jobs, such as wrapper, sewing machine operator, or inspector/hand packager.  (A.R. 25-26.)  Thus, the ALJ found that Plaintiff was not disabled.  (A.R. 27.)

/ / /

/ / /

## IV. DISCUSSION

Plaintiff presents the following issues for review: (1) whether the ALJ properly considered his subjective symptom testimony; (2) whether the ALJ failed to consider the frequency and duration of treatment required; and (3) whether Plaintiff's impairments were properly incorporated into the vocational expert's hypothetical.  The Court will address each in turn.

### A. Subjective Symptom Testimony

Plaintiff argues that the ALJ improperly discounted his subjective symptom testimony relating to the intensity, persistence, and functional limiting effects of his impairments.  The Commissioner argues the ALJ reasonably evaluated Plaintiff's subjective complaints.

A claimant's testimony is analyzed in two steps.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.*  Second, if there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if she provides "specific, clear and convincing reasons" for doing so.  *Id.*  "In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

discredit claimant's testimony.'" *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d at 722 (quoting *Lester*, 81 F.3d at 834).

To assess a claimant's subjective symptom testimony, the ALJ may consider (1) ordinary credibility techniques, (2) unexplained or inadequately explained failure to seek or follow treatment or to follow a prescribed course of treatment, and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989). An ALJ may also take the lack of objective medical evidence into consideration. *Baston v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause his symptoms, and there is no argument that he is malingering. Therefore, the ALJ was required to cite specific, clear, and convincing reasons for rejecting Plaintiff's subjective testimony about the severity of his symptoms. The Court finds the ALJ did so.

First, the ALJ found Plaintiff's statements about his spine were inconsistent with the imaging evidence. (A.R. 19.) Plaintiff testified that Dr. Schabacker told him he had a herniated disc with some fractures. (A.R. 75.) But the ALJ noted

that an MRI from 2011 showed a large herniated disc at L5/S1, without mention of a spine fracture, and an MRI from February 2017 specifically stated, "no evidence of compression fracture." (A.R. 19.) The ALJ also noted that Plaintiff's testimony that his medications caused significant side effects was inconsistent with his treating physician's records that clearly indicated Plaintiff reported no side effects. (A.R. 24.) The ALJ further noted Plaintiff had requested and received a letter from his doctor stating he has no limiting side effects and can drive while taking his medications. (A.R. 24-25.) The ALJ's observations are consistent with the medical record. (*See* A.R. 344, 343, 368, 372, 392, 414-415, 423, 429, 443, 453, 489, 512, 516, 553, 575, 657.) An ALJ may reject a claimant's statements that "do not comport with objective evidence in [the] medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

    The ALJ also found Plaintiff's statements about the intensity, persistence and limiting effects of his pain were inconsistent with the objective medical evidence. (A.R. 19-21.) An ALJ may take objective medical evidence into consideration when assessing credibility. *Baston*, 359 F.3d at 1196. Here, the ALJ recognized that examinations showed moderately reduced lumbar flexion, reduced lower extremity sensation, and variable pinprick perception in the lower extremities, noted the findings were stable over time, and limited Plaintiff's RFC accordingly. (A.R. 20-21, 24.) The ALJ's observations are supported by the

examination records. (*See e.g.*, A.R. 343, 348, 371-72, 447.) The ALJ further found, however, that physical examinations consistently showed Plaintiff was able to heel and toe walk without difficulty, his straight leg tests were normal, his strength testing was normal, he had good range of motion, Plaintiff was reported as able to sit comfortably during examination, he had normal gait, he could walk community distances, he did not use an assistive device, and he had no medical restrictions from a treatment provider. (A.R. 20-21, 24.) Again the ALJ's findings are consistent with the record. (*See* A.R. 343, 353-54, 408, 453, 493, 515, 522, 529, 557, 589, 655-56.) The ALJ also accurately noted that aside from reports of irritability, anxiety and/or depression in relation to chronic pain, the record showed Plaintiff had generally normal psychiatric findings at physician visits. (*See* A.R. 339, 352, 354, 368, 372, 384, 392, 445, 453, 518, 580, 620.)

The ALJ pointed out that Plaintiff treated his condition primarily with prescription medications, Plaintiff had declined surgery and he did not fully utilize his allotted steroid injections. (A.R. 19, 24.) The record supports the ALJ's findings. (*See* A.R. 351, 506, 510, 547, 589, 618, 639, 659, 672-80.) Evidence of conservative treatment may be "sufficient to discount a claimant's testimony regarding the severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).

Next, the ALJ found Plaintiff's activities of daily living were inconsistent with his statements. (A.R. 25.) The ALJ noted that Plaintiff is able to volunteer daily at his daughter's school, including serving lunch and cleaning up, traveled to Las Vegas and planned a return trip, is independent with dressing, bathing toileting, and is able to maintain his household adequately well. (A.R. at 20, 25.) The ALJ also pointed out that Plaintiff had applied to renew his CDL. (A.R. 21.) The ALJ's observations are supported by the evidence in the record (*See* A.R. 339, 443, 512, 516 ), and are legitimate reasons for discounting a claimant's testimony. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (stating an ALJ may discount a claimant's subjective complaints when they are inconsistent with the claimant's activities).

Plaintiff argues a different interpretation should be drawn from the medical records. But the Court may not substitute its judgment for that of the ALJ. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Rather, it "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d 1035, 1039-1040 (9th Cir. 1995).

The Court therefore finds the ALJ's evaluation of Plaintiff's testimony is properly supported by specific, clear and convincing reasons.

/ / /

## B. Consideration of Treatment

Plaintiff argues the ALJ improperly ignored Social Security Ruling ("SSR") 96-8p, which requires consideration of the effects of the claimant's medical treatment on the RFC by incorporating the frequency and duration of treatment. Plaintiff argues that by doing so the ALJ improperly discounted the findings of his treating medical providers. The Commissioner counters that the ALJ reasonably and expressly considered Plaintiff's treatment history and that the ALJ's consideration of the treating providers was supported by substantial evidence.

### a. SSR 96-8p

To the extent Plaintiff argues the ALJ did not properly consider treatment needs as required by SSR 96-8p, the Court finds no error in this case. SSR 96-8p requires the ALJ to consider the effects of medical treatment in developing the RFC. SSR 96-8p, 61 Fed. Reg. 34474-01, 1996 WL 362207. An ALJ's failure to consider the effect of a claimant's treatment needs may constitute reversible error. *See Bourcier v. Saul*, 856 Fed. Appx. 687, 691 (9th Cir. 2021); *Edmunds v. Kijakazi*, 2021 WL 4452762, *6 (D. Mont. Sept. 29, 2021); *Jones v. Kijakazi*, 2022 WL 595729, *4 (D. Mont. Feb. 28, 2022); *Chase v. Saul*, 2022 WL 819680, *7-8 (D. Mont. Mar. 18, 2022); *Mariah v. Saul*, 2021 WL 1660947, *8 (D. Mont. April 28, 2021).

/ / /

Here, the ALJ noted that Plaintiff was allotted four epidural steroid injections per year, but he did not undergo injections even twice per year. (A.R. 20, 24.) The ALJ, therefore, acknowledged that Plaintiff had an ongoing need for treatment, but found Plaintiff underutilized available treatment. Thus, the ALJ did consider Plaintiff's treatment needs, including evidence of the frequency of Plaintiff's treatment.

But, here, even assuming the ALJ failed to consider Plaintiff's treatment needs, any such error was harmless. "To show that an ALJ's error was not harmless, a claimant must demonstrate a 'substantial likelihood of prejudice.'" *Mariah*, 2021 WL 1660947, at *8 (quoting *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012).

The vocational expert testified that if an individual would miss more than two workdays in a typical work month on at least occasional basis, it would prevent competitive employment. (A.R. 93.) Here, Plaintiff had approximately 50 medical visits from 2017 to 2019.[1] Thus, over that three year period, he averaged 1.3 visits per month. This absence rate does not exceed the threshold for permissible monthly absences identified by the vocational expert. Moreover, Plaintiff does not cite – and the Court did not find – any medical source opinion

---

[1] According to Plaintiff's tally, he had 25 appointments in 2017, 15 in 2018 and 10 in 2019. (Doc. 14 at 10.)

that Plaintiff would frequently miss work due to medical appointments or treatment needs. There is also no evidence to establish that he would be required to attend appointments during work hours, that his appointments would cause him to miss an entire day of work, or that the need, frequency, and duration of his treatment would continue at the same level. The Court, therefore, cannot find a substantial likelihood of prejudice, and any error in failing to incorporate treatment needs in the RFC was harmless.

      b.    <u>Treating Providers</u>

Plaintiff argues the ALJ did not give proper consideration to his treating physician, Dr. Schabacker or his counselor, Cheryl Lyson. The Commissioner argues the ALJ's consideration of the medical evidence was reasonable.

In assessing a disability claim, an ALJ may rely on "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995.) The Commissioner applies a hierarchy of deference to these three types of opinions. The opinion of a treating doctor is generally entitled to the greatest weight. *Id.*; *see also* 20 C.F.R. § 404.1527(c)(2).[2]

---

[2] Because Plaintiff filed his claim prior to March 27, 2017, the rules in 20 C.F.R. § 404.1527 apply.

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830.

If the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques, or is inconsistent with other substantial evidence in the record, it is not entitled to controlling weight. *Orn v. Astrue*, 495 F.3d 625, 631-32 (9th Cir. 2007) (quoting Social Security Ruling 96-2p). In that event, however, the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) to determine what weight to accord the opinion. *See* Social Security Ruling 96-2p. The factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) the specialization of the treating source; and (6) any other factors brought to the ALJ's attention that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)(I)-(ii), (c)(3)-(6).

With regard to Dr. Schabacker, Plaintiff argues the ALJ failed to give proper weight to his August 2019 assessment that there was "plenty of objective evidence to support [Plaintiff's] complaints of pain." First, it does not appear from the record that Dr. Schabacker submitted a medical opinion concerning Plaintiff's functional capacity. The August 2019 assessment that Plaintiff refers to is a treatment note. (A.R. 489-494.) The ALJ's opinion clearly indicates he

15

considered Dr. Schabacker's treatment notes, including the notation about Plaintiff's pain in the August 2019 note.  (*See* A.R. 21 ("In August 2019, his physician noted he had plenty of objective evidence to support his pain complaint.").)  But the ALJ did not assign any weight to the notes, and was not required to.

Treatment notes, in general, do not constitute medical opinions.  *See* 20 C.F.R. § 416.927(a)(2) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").  Because Dr. Schabacker did not offer an opinion regarding Plaintiff's limitations or ability to work, his treatment notes do not constitute medical opinions the ALJ must weigh.  *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (holding that where physician's report did not assign any specific limitations or opinions regarding the claimant's ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions.").  Thus, the Court finds the ALJ did not err with regard to Dr. Schabacker.

Moreover, Plaintiff ignores the totality of Dr. Schabacker's notes, which support the ALJ's conclusion.  For example, Dr. Schabacker was skeptical of

Plaintiff's claimed inability to work.  In March 2017, Plaintiff requested that Dr. Schabacker complete disability paperwork on his behalf.  (A.R. 350.)  Dr. Schabacker noted Plaintiff had "decided without any measurable change in his condition that no longer can he work and it is incumbent upon me to follow along with that mandate[]." (*Id.*)  Dr. Schabacker further stated he advised Plaintiff "there is no objective reason that he can no longer work whereas before he could." (A.R. 354.)  Dr. Schabacker reviewed MRI scans from 2011 and 2017, and indicated that Plaintiff's disc herniation was actually larger in the past.  (*Id.*)  Dr. Schabacker also noted Plaintiff was "remarkably adverse" to surgery, and stated Plaintiff's "failure to aggressively attempt to at least explore treatment options to address his back pain rather than simply choosing to no longer work would be in order."  (*Id.*)  In July 2017, Plaintiff again presented disability paperwork to Dr. Schabacker.  (A.R. 454.)  Dr. Schabacker again noted that he did not endorse Plaintiff's determination that he should not work.  (*Id.*)  In March 2018, Dr. Schabacker reported that "from my perspective is [sic] no foraminal change in his condition that caused him to no longer be able to work."  (A.R. 594.)  Therefore, if anything, Dr. Schabacker's notes support, rather than detract from the ALJ's disability determination.

With regard to Ms. Lyson, Plaintiff argues the ALJ failed to provide a valid reason for discounting her opinion. In his decision, the ALJ gave the opinion of Ms. Lyson "little weight." (A.R. 24.)

At the time Plaintiff's claim was filed, the Social Security regulations separated medical evidence into two categories: (1) "acceptable medical sources," which includes licensed physicians and licensed or certified psychologists; and (2) "other sources," which includes nurse practitioners, physician's assistants, therapists, and counselors. 20 C.F.R. 416.913(a), (d) (amended March 27, 2017). *Leon v. Berryhill*, 2017 WL 7051119, *3 (9th Cir. Nov. 7, 2017) (noting that prior to March 27, 2017, opinions of "other sources," such as nurse practitioners were not given the same weight as a physician's opinions). Opinions of "other sources," are not entitled to the same deference as "acceptable medical sources." *Molina v. Astrue*. 674 F.3d 1104, 1111 (9th Cir. 2012). The ALJ may discount opinions from "other sources" as long as the ALJ gives "germane reasons" for doing so. *Id*.

Here, the ALJ determined Ms. Lyson's opinion that Plaintiff was disabled and unable to work was not persuasive or helpful. (A.R. 24.) The ALJ accurately pointed out that Ms. Lyson's opinion was vague in that it did not provide an assessment of Plaintiff's functional capacity limitations. (A.R. 469.) Further, the ALJ noted Ms. Lyson's opinion relied upon her own assessment or assumptions about Plaintiff's physical condition, which she is not qualified to evaluate. (A.R.

18

24.) The ALJ may consider the source's specialization in determining the weight to afford the opinion. 20 C.F.R. § 404.1527(c)(5).

In addition, the ALJ found Ms. Lyson's opinion was inconsistent with Dr. Schabacker's notes because she documented physical limitations in excess of those he found. (A.R. 25.) The ALJ stated Dr. Schabacker's notes were more persuasive because of his specialty in pain management and treatment relationship with Plaintiff. (*Id.*) The ALJ's observations are supported by the record, and are a sufficiently germane reasons to discount Ms. Lyson's opinion. 20 C.F.R. § 404.1527(c)(4); *Hughley v. Colvin*, 628 F. App'x 519, 520 (9th Cir. 2016) (an ALJ may afford a medical opinion less weight on the basis that it is inconsistent with the medical record as a whole). Accordingly, the ALJ did not err in affording little weight to Ms. Lyson's opinion.

### C. Vocational Expert's Hypothetical

Finally, Plaintiff argues the ALJ failed to incorporate all of his limitations into the hypothetical questions posed to the vocational expert. The Commissioner contends the hypothetical questions included all of Plaintiff's limitations that were supported by the record.

Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). "The testimony of a vocational expert 'is valuable only

19

to the extent that it is supported by medical evidence.'" *Magallanes*, 881 F.2d 747, 756 (9th Cir. 189) (quoting *Sample*, 694 F.2d 639, 644 (9th Cir. 1982)).  If the assumptions in the hypothetical are not supported by the record, then the vocational expert's opinion that the claimant has a residual working capacity has no evidentiary value.  *Embrey*, 849 F.2d at 422

As discussed above, the Court has determined the ALJ adequately supported his reasons for discounting Plaintiff's testimony and the treating providers opinions.  Accordingly, the hypotheticals the ALJ relied on properly accounted for all of Plaintiff's limitations that the ALJ found to be supported by evidence in the record.

Therefore, the Court finds the ALJ's determination at step five is supported by substantial evidence.

## V.   CONCLUSION

Based on the foregoing,  **IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**, and Plaintiff's motion for summary judgment (Doc. 14) is **DENIED**.

DATED this 28th day of March, 2022.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge